Shawn Lanard Hall, the former husband, appeals from a judgment holding him in contempt for failing to transfer his interest in the marital residence to Juanita M. Hall, the former wife, in accordance with the terms of the parties' divorce judgment. *Page 959 
After an 11-year marriage, the parties were divorced pursuant to a judgment entered by the Baldwin Circuit Court in April 2000. The former wife was awarded custody of the parties' two minor children, and the former husband was ordered to pay her child support. As to the disposition of the marital residence, the divorce judgment stated:
 "6. The [marital residence] owned by the parties . . . will become the sole property of the Defendant/Wife who agrees to pay the mortgage, to live up to the terms of the mortgage, and to hold the Plaintiff/Husband harmless from any breach thereof. Husband agrees to execute a Statutory Warranty Deed to the wife within 30 days from the date of this [Judgment], failing which, the Clerk of Court is authorized to execute said Deed on his behalf upon a Verified Petition being filed showing his failure and proper description of the property to be conveyed. The mortgage payments are current with a balance of approximately $76,000. The parties have no other real property. When the younger child reaches the age of majority or if the Wife sells the real property or has it refinanced where she receives a payment of part of the equity in the homeplace before the younger child reaches majority, the Wife shall pay the Husband the sum of $15,000.00 as his present equity in the homeplace."
In December 2001, the former husband filed a petition to modify his child-support obligation. The former wife filed an answer denying that the former husband was entitled to a child-support modification. She also alleged that the former husband had not conveyed his interest in the marital residence to her in accordance with paragraph 6 of the divorce judgment. The relief requested by the former wife was that the trial court "require [the former husband] to purge himself of contempt by conveying to her the real property heretofore ordered to be conveyed to her by paragraph 6 of the [Judgment] of Divorce."
In October 2002, the former husband submitted an application to refinance the mortgage on the marital residence; he still had not conveyed his interest in the residence to the former wife. The parties presented conflicting evidence as to how the mortgage refinancing occurred.[1] However, *Page 960 
it is undisputed that in October 2002 the former wife executed a quitclaim deed for her interest in the marital residence to the former husband and that the former husband refinanced the mortgage on the marital residence for $106,250. The proceeds from the refinancing were used to pay off the existing mortgage of $76,408, to pay $10,182 in settlement charges, to pay the former husband $15,000, and to pay the former wife $4,660. After the former husband refinanced the mortgage, he executed a quitclaim deed transferring title to the marital residence to the former wife. At trial, the former husband admitted that he had never executed a statutory warranty deed to the former wife as required by paragraph 6 of the divorce judgment. He stated, however, that he did not know the difference between a statutory warranty deed and a quitclaim deed. He also testified that his understanding of the divorce judgment was that, if he did not deliver a statutory warranty deed to the former wife within 30 days of the divorce judgment, such a deed would be obtained by the former wife from the clerk of the court. The record indicates that the former wife did not at any time request a statutory warranty deed from either the former husband or the clerk of the court.
After an ore tenus hearing held on March 27, 2003, the trial court stated that it intended to enter an order modifying the former husband's child-support obligation. The trial court also stated:
 "The warranty deed. I find that [the former husband] is in contempt. The warranty deed should have been executed a long time ago. And just because it says the Court's going to do it for you doesn't mean that you sit on your rear end and gain fifteen thousand dollars out of it some years later.
 "[The former husband] will pay ten thousand dollars as the purge amount by next Friday, at noon, . . . or a pick up order will be issued for [his] arrest."
Before a written judgment was entered, the former husband filed a "Motion to Alter, Amend or Vacate Order of Contempt." The trial court held a hearing on the former husband's motion on April 10, 2003. At the hearing, the former wife argued, in part, that the former husband's execution of a quitclaim deed to her was not the equivalent of executing a statutory warranty deed. The former husband argued, in part, that the appropriate remedy was to require the former husband to execute a statutory warranty deed to the former wife, not to fine him. The hearing transcript reflects that the trial court was disturbed by the former husband's failure to abide by the terms of the divorce judgment for approximately two years and by the refinancing of the mortgage on the property. However, the trial court was also concerned that the former wife had obtained $4,660 as part of the refinancing transaction. The trial court stated:
 "I don't think that [the former husband] should be relieved of the contempt of the Court just because the [former] wife was also enriched. Sure he may have deeded it back over to her but not before he got himself a pile of cash out of it. And I think it is appropriate that if he waited almost two years to do what he should have done within the first thirty days after the divorce, and made himself fifteen thousand dollars richer off of it, that there should be contempt. He is still in contempt of this court. And he is still to pay ten thousand dollars. How many children are there?
". . . .
 "Since the [former] wife was also enriched I am not going to enrich her any further but I will enrich the children. The ten thousand dollars is to be paid *Page 961 
five thousand each into a prepaid college tuition plan for those two children. One for each. He has sixty days to do it or there will be an automatic pick up order."
On May 21, 2003, the trial court entered a written judgment modifying the former husband's child-support obligation and stating:
 "3. An order of civil contempt is issued against the [former husband] for failing to convey his interest in the marital property to the [former wife] within 30 days from the date of the Final [Judgment] of Divorce, as ordered in said Final [Judgment], and the [former husband] is ordered to pay the sum of FIVE THOUSAND NO/100 DOLLARS . . . for each of the parties' two children to the Alabama Education Trust Fund for the future education of the said children as penalty for his noncompliance."
The former husband appeals.
Some of the former husband's arguments on appeal are not supported by citation to legal authority; others are directed toward the possibility that the trial court intended to hold him in criminal contempt. We have limited our discussion to only those portions of the former husband's arguments for which relevant legal authority has been provided. See Rule 28(a)(10), Ala. R.App. P.; Asam v. Devereaux, 686 So.2d 1222, 1224
(Ala.Civ.App. 1996) ("[t]his court will address only those issues properly presented and for which supporting authority has been cited"). Also, because we conclude that the trial court held the former husband in civil contempt, as it stated in the written judgment, we need not address the former husband's arguments as to criminal contempt.[2]
Rule 70A(a)(2)(D), Ala. R. Civ. P., provides, in pertinent part, that "`Civil contempt' means willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with." As our Supreme Court has explained:
 "Civil contempt seeks to compel or coerce compliance with orders of the court, while a criminal contempt is one in which the purpose of the proceeding is to impose punishment for disobedience of orders of the court. Charles Manufacturing Co. v. United Furniture Workers, 361 So.2d 1033, 1035 (Ala. 1978); Ex parte Abercrombie, 277 Ala. 479, 172 So.2d 43 (1965); Carroll v. State, 350 So.2d 723 (Ala.Crim.App. 1977).
 "The sanction for civil contempt continues indefinitely until the contemnor performs as ordered."
State v. Thomas, 550 So.2d 1067, 1072 (Ala. 1989).
The former husband contends that the trial court erred by holding him in civil contempt because, he says, his failure to comply with paragraph 6 of the divorce judgment was neither "willful" nor "continuing." As to whether the former husband's failure to comply was "willful," the evidence before the trial court was in conflict, and, given the deference owed to a trial court in an ore tenus proceeding, particularly as to the credibility determinations for which the trial court is responsible, we cannot say that there was not substantial evidence to support a finding *Page 962 
that the former husband willfully failed to comply with the divorce judgment's requirement that he execute and deliver to the former wife, within 30 days of the divorce judgment, a statutory warranty deed. Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986).
The former husband's contention that his failure to comply with paragraph 6 of the divorce judgment was no longer "continuing" also is without merit. The divorce judgment required that the former husband execute a statutory warranty deed to the former wife. By his own admission, the former husband only executed a quitclaim deed to the former wife.
If a grantor has good legal title, a "quitclaim [deed] is as effectual to pass [title] as a warranty deed." Heath v.Scarborough, 248 Ala. 302, 304, 27 So.2d 632, 633 (1946). However, the grantor of a quitclaim deed is not responsible for the goodness of his title. See Garrow v. Toxey, 171 Ala. 644,651, 54 So. 556, 558 (1911). By contrast, a statutory warranty deed includes
 "an express covenant to the grantee, his heirs and assigns, that the grantor was seised of an indefeasible estate in fee simple, free from incumbrances done or suffered by the grantor, except the rents and services that are reserved; and also for quiet enjoyment against the grantor, his heirs and assigns, unless limited by the express words of such conveyance; and the grantee, his heirs, personal representatives, and assigns may, in any action, assign breaches, as if such covenants were expressly inserted."
Ala. Code 1975, § 35-4-271.
The record contains no indication that, at any time prior to his appeal of this case, the former husband had provided to the former wife the statutory warranty deed required by the divorce judgment. To the contrary, the positions of the parties and the testimony provided at both the trial court's March 27 hearing and its subsequent April 10 hearing on the former husband's motion to alter, amend, or vacate make it clear that the former wife still had not received the express warranties of title that she was entitled to under the terms of paragraph 6 of that judgment. Because the former husband could have at any time complied with paragraph 6 of the divorce judgment by executing a document warranting title to the former wife (as opposed to merely conveying whatever title he held to her), the terms of the divorce judgment, other than the timing of the conveyance, were "still capable of being complied with." See Rule 70A(a)(2)(D).
The former husband next contends that the trial court erred by imposing a "fine" on him for civil contempt. Rule 70A(e)(2), Ala. R. Civ. P., states: "The court may order that a person who had been found to be in civil contempt be committed to the custody of the sheriff until that person purges himself or herself of the contempt by complying with the court's . . . order." (Emphasis added.) "The purpose of a civil contempt proceeding is to effectuate compliance with court orders and not to punish the contemnor." Watts v. Watts, 706 So.2d 749, 751 (Ala.Civ.App. 1997). As this court stated in Sealy v. D'Amico, 789 So.2d 863
(Ala.Civ.App. 2000):
 "Rule 70A(e)(2), Ala. R. Civ. P., provides for incarceration upon a finding of civil contempt. However, that rule makes no provision for the payment of a `sanction' as ordered by the trial court in this case. Further, case law indicates that the coercive nature of a judgment of civil contempt under the circumstances of this case does not envision the imposition of a sanction as a punishment."
Sealy, 789 So.2d at 866.
The trial court's order that the former husband pay $5,000 "for each of the *Page 963 
parties two children to the Alabama Education Trust Fund for the future education of the said children as penalty for his noncompliance" is an impermissible sanction for the former husband's civil contempt in failing to provide the former wife with the warranties of title contemplated by the divorce judgment. Accordingly, while the judgment of the trial court holding the former husband in civil contempt is due to be affirmed, the trial court's imposition of a $10,000 "penalty" in conjunction with its civil-contempt finding is due to be reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] According to the testimony of the former husband, the former wife was having difficulty making the mortgage payments on the preexisting mortgage, which was a variable-rate mortgage as to which the rate had recently increased, and, by refinancing the debt on the house, a lower fixed rate was obtained for the former wife's benefit. He also testified that the former wife did not have sufficient credit to obtain a new mortgage loan, and that she had conveyed her interest in the property to the former husband by quitclaim deed in order to facilitate the refinancing. Thereafter, according to the former husband, he refinanced the property, kept $15,000 from the "excess" mortgage proceeds for his "equity interest" in the marital residence, and reconveyed title to the marital residence to the former wife by quitclaim deed, as he claimed the parties had agreed. The former husband also testified that the parties had agreed that he would pay $200 per month for a period of three years to assist in paying the new mortgage loan.
According to the testimony of the former wife, she was deceived into executing a quitclaim deed for her interest in the marital residence to the former husband in October 2002. She stated that she believed she had executed a document refinancing the mortgage, not a quitclaim deed. The former wife also stated that, after she discovered that she had executed a quitclaim deed, she contacted the mortgage company and attempted to rescind the mortgage. However, she conceded that she eventually accepted some cash from the mortgage refinancing and that the former husband conveyed title to the marital residence back to her. The former wife also agreed that she paid the installments on the new mortgage loan with the former husband's assistance in the amount of $200 per month.
[2] The former husband argues that the trial court erred if it actually determined the he was in criminal contempt because, he says, such a determination was against the great weight of the evidence and because, he says, the fine imposed on him exceeded the maximum amount permitted by Ala. Code 1975, § 12-11-30(5) ("circuit court may punish [criminal] contempts by fines not exceeding one hundred dollars").