James E. Stamm ("the ex-husband") and Jane McCammack Stamm ("the ex-wife") were divorced in 1978. Pursuant to their divorce judgment, the ex-husband was ordered to pay the ex-wife alimony. Since the entry of the divorce judgment, the ex-husband's alimony obligation has been modified; he is now required to pay $1,600 per month in alimony. The ex-husband has not paid alimony since August 2002. Although the ex-husband sought the termination of his alimony obligation, the trial court, in January 2003, denied his petition. The ex-husband appealed that determination; we affirmed the trial court's judgment, without an opinion. Stammv. Stamm, (No. 2020468, October 3, 2003) 898 So.2d 926
(Ala.Civ.App. 2003) (table). The ex-husband did not resume paying alimony, and, after instituting an unsuccessful garnishment proceeding, the ex-wife brought an action seeking to have the ex-husband held in contempt and seeking the institution of a qualified domestic relations order ("QDRO") directing the ex-husband's brokerage firm to pay her the alimony arrearage due and all future monthly alimony payments out of the ex-husband's three individual retirement accounts ("IRAs"), which have an aggregate total value of approximately $375,000.
The ex-husband appeals the trial court's entry of an order holding him in contempt and directing his brokerage firm to pay the ex-wife $19,200 in a lump sum to pay off the ex-husband's alimony arrearage and a monthly payment in the amount of $1,600 for the ex-husband's future alimony obligation. He argues that the trial court lacked subject-matter jurisdiction to enter the order because, he argues, the entry of such an order is essentially a modification of the property-settlement provisions of the 1978 divorce judgment,[1] the trial court's order does not qualify as a QDRO, and the trial court did not have sufficient evidence to find him in contempt. The ex-wife argues that the trial court had jurisdiction *Page 922 
to enter the order to enforce payment of the ex-husband's alimony obligation and that the trial court's order qualifies as a QDRO under federal and state law. She also argues that the trial court had sufficient evidence from which it could have determined that the ex-husband had the ability to pay his alimony obligation, and, thus, it had sufficient evidence to find the ex-husband in contempt.
A QDRO is defined in both the Internal Revenue Code, see26 U.S.C. § 414(p), and the Employee Retirement Income Security Act ("ERISA"), see 29 U.S.C. § 1056(d)(3)(B)(i). As the ex-husband notes, his IRAs are not covered by ERISA. However, pursuant to Ala. Code 1975, § 19-3-1(d)(3), an IRA is a qualified trust under Alabama law. In an exception to the anti-assignment provisions relating to qualified trusts under Alabama law, Ala. Code 1975, §19-3-1(b)(3), refers to 26 U.S.C. § 414(p). Pursuant to §19-3-1(b)(3), an IRA is protected from assignment unless the order assigning the benefits to an alternate payee qualifies as a QDRO under 26 U.S.C. § 414(p).
A QDRO is defined in 26 U.S.C. § 414(p) as follows:
 "(p) Qualified domestic relations order defined. — For purposes of this subsection and section 401(a)(13) —
"(1) In general. —
 "(A) Qualified domestic relations order. — The term `qualified domestic relations order' means a domestic relations order —
 "(i) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
 "(ii) with respect to which the requirements of paragraphs (2) and (3) are met.
 "(B) Domestic relations order. — The term `domestic relations order' means any judgment, decree, or order (including approval of a property settlement agreement) which —
 "(i) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
 "(ii) is made pursuant to a State domestic relations law (including a community property law).
 "(2) Order must clearly specify certain facts. — A domestic relations order meets the requirements of this paragraph only if such order clearly specifies —
 "(A) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
 "(B) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
 "(C) the number of payments or period to which such order applies, and
"(D) each plan to which such order applies.
 "(3) Order may not alter amount, form, etc., of benefits. — A domestic relations order meets the requirements of this paragraph only if such order —
 "(A) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
 "(B) does not require the plan to provide increased benefits (determined *Page 923 
on the basis of actuarial value), and
 "(C) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order."
The parties both discuss cases from other jurisdictions at length in their briefs to this court. As noted, the ex-husband's IRAs are not covered under ERISA. Accordingly, although tangentially supportive of both parties' positions, the cases from other jurisdictions addressing QDROs under ERISA or under another state's laws are not germane to the decision facing this court — namely, whether an Alabama court may use a QDRO to assign benefits from the ex-husband's IRAs to the ex-wife to satisfy an alimony arrearage and to maintain current alimony payments.
The heart of the ex-husband's argument is that the trial court's order is not a QDRO because, he alleges, it fails to comply with Alabama's domestic-relations laws in that it creates in the ex-wife an interest in the ex-husband's retirement account that did not exist under the property-division provisions of the original divorce judgment. The ex-husband is correct when he states that Alabama law limits a trial court's ability to modify a property settlement to 30 days after entry of the judgment.See, generally, Ex parte Littlepage, 796 So.2d 298, 301 (Ala. 2001) (quoting Hamilton v. Hamilton, 647 So.2d 756, 759
(Ala.Civ.App. 1994)) ("`A court cannot modify property provisions [in divorce judgments], except to correct clerical errors, after 30 days from the final judgment.'"); see also McGuire v.Horton, 586 So.2d 9, 10 (Ala.Civ.App. 1991). However, a trial court has the inherent power to enforce its judgments "and to make such orders and issue such process as may be necessary to render [the judgments] effective." Dial v. Morgan,515 So.2d 14, 15 (Ala.Civ.App. 1987) (citing Monroe v. Monroe,356 So.2d 196, 200 (Ala.Civ.App. 1978)); see also King v. King,636 So.2d 1249, 1254 (Ala.Civ.App. 1994). In addition, this court has held that a party's retirement benefits, once they are part of the party's current income, may be considered as income from which to pay periodic alimony. Yohey v. Yohey, 890 So.2d 160, 167-68
(Ala.Civ.App. 2004).
The ex-husband in the present case argues that he is not regularly drawing money from his IRAs and that, therefore, they are not providing him with income. He argues that this court's opinion in Smith v. Smith, 866 So.2d 588, 592 (Ala.Civ.App. 2003), held that retirement benefits that are not yet being drawn cannot be considered as a source of income for the payment of periodic alimony, thus preventing his IRAs from being considered as a source from which he can pay alimony. Although Smith did indeed hold that retirement accounts may not be considered as a resource from which a party may be ordered to pay alimony when the party is not retired and is not drawing benefits from those accounts, we have more recently held that a trial court may consider retirement accounts as a source from which a party may be required to pay alimony if the trial court has evidence from which it can determine that those retirement accounts are being used as a source of current income to the party. Yohey,890 So.2d at 168.
The husband in Yohey also argued that he was not currently drawing money from his IRA to contribute to his living expenses but that, instead, he drew money only for "emergency needs." *Page 924 
890 So.2d at 168. After considering the evidence presented to the trial court, we held that the trial court could have determined that the husband in Yohey was using funds from his IRA to at least partially fund his sizeable living expenses based on a comparison of those expenses with the meager income he had from other sources. 890 So.2d at 168. Like the husband in Yohey, the ex-husband in the present case admitted that he had withdrawn $30,000 from his IRAs in February 2003; the ex-husband's testimony does not indicate for what purpose he withdrew the $30,000. Thus, based on Yohey, the trial court was free to determine that the ex-husband used the $30,000 for regular living expenses and, therefore, was free consider the ex-husband's IRAs as a source of income from which the ex-husband could be required to pay alimony. Therefore, we conclude that the trial court's order is "made pursuant to a State domestic relations law."26 U.S.C. § 414(p)(1)(B)(ii).
The ex-husband's other argument in support of his contention that the trial court's order does not qualify as a QDRO is that the order does not specify the number of payments or period to which the order applies, as is required by26 U.S.C. § 414(p)(2)(C). The order, however, does specify that the payments should continue pending further order of the court or until the funds in the IRAs are exhausted. The ex-husband cites no authority supporting a conclusion that an exact number of payments or a definite time period must be stated by the trial court in order for an order to qualify as a QDRO. Accordingly, we conclude that the trial court's order complies with26 U.S.C. § 414(p)(2)(C).
The ex-husband also argues that there was insufficient evidence to support holding him in contempt for failing to pay alimony. He argues that the evidence demonstrates that he is unable to pay alimony to the ex-wife. The ex-wife contends that the trial court had ample evidence upon which to base its finding of contempt.
 "[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm."
Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App. 1994). Rule 70A, Ala. R. Civ. P., has governed contempt proceedings in civil actions since July 11, 1994. Rule 70A(a)(2)(D) defines "civil contempt" as a "willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with." As the ex-husband argues, the inability to comply with the trial court's judgment is a valid defense in contempt proceedings. See Gilbert v. Nicholson, 845 So.2d 785,791 (Ala. 2002); Ex parte Baker, 623 So.2d 304, 306
(Ala.Civ.App. 1993); and Hill v. Hill, 562 So.2d 255, 257
(Ala.Civ.App. 1990). However, the trial court's determination that a party's failure to comply with a judgment is willful and not due to an inability to comply, when based on ore tenus evidence, will be affirmed if it is supported by one view of that evidence. See Gilbert, 845 So.2d at 791-92; Hill,562 So.2d at 257.
The ex-wife, in contending that the trial court had more than sufficient evidence upon which to base its finding of contempt, relies, in part, on the testimony presented to the trial court at the hearing on the ex-husband's petition to terminate his alimony obligation in January 2003. The ex-husband objects to the consideration of this evidence because, he says, none of it was *Page 925 
presented or argued to the trial court at the contempt hearing. Thus, the ex-husband concludes, the evidence adduced at the contempt hearing is simply not sufficient to support a contempt finding.
Generally, a trial court may take judicial notice of matters of record in its own proceedings. Ex parte State Dep't of HumanRes., 890 So.2d 114, 116 (Ala. 2004) (noting the general rule but recognizing the caveat that, particularly in a juvenile case, a trial court may not take judicial notice of any evidence admitted in a dispositional hearing that would not be admissible in an adjudicatory hearing). Testimony from the January 2003 hearing indicated that the ex-husband had the ability to pay alimony based on evidence indicating that the ex-husband had made substantial purchases for his stepdaughters, that his current wife had removed slightly more than $73,000 from a joint money-market account shortly before the hearing, and that the ex-husband had spent large sums of money he had been awarded from his disability-insurance company.[2] In addition, testimony from the contempt hearing indicated that the ex-husband had removed approximately $30,000 from his IRAs about six months before the hearing on the ex-wife's contempt petition. The other testimony at the contempt hearing established that the ex-husband was unemployed, that he suffered from a heart condition and took several medications for that and other medical conditions, and that he drew $1,030.50 per month in Social Security benefits after the ex-wife's garnishment of those benefits. In addition, the evidence revealed that his house had been foreclosed on and that a motor home that he and his current wife had previously purchased had been repossessed. In light of the trial court's ability to consider all evidence of record in the earlier proceedings between these parties, including the testimony from the hearing on the ex-husband's petition to terminate his alimony obligation only eight months earlier, in which the trial court heard evidence that led to its decision not to terminate the ex-husband's alimony obligation, the trial court's finding that the ex-husband was in contempt for failing to pay alimony is supported by the evidence.
Having concluded that the trial court's order qualifies as a QDRO pursuant to 26 U.S.C. § 414(p) and § 19-3-1(b)(3), Ala. Code 1975, we affirm the issuance of the QDRO directing the ex-husband's brokerage firm to pay the ex-wife the accumulated alimony arrearage and the future monthly alimony payments. In addition, we affirm the trial court's order finding the ex-husband in contempt.
The ex-wife's request for an attorney fee on appeal is denied.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., dissents, without writing.
[1] The ex-husband also argues that the doctrines of res judicata or collateral estoppel barred the trial court from entering its order. This argument is based on the premise that the trial court's order effects a property division in contravention of the original divorce judgment. Our resolution of the ex-husband's argument that the trial court lacked subject-matter jurisdiction to enter the order based on the same grounds, resolves the issues relating to res judicata and collateral estoppel as well, so we will not discuss issues relating to res judicata or collateral estoppel separately in this opinion.
[2] On the ex-husband's motion, this court has incorporated into the record of this appeal the record of the appeal in case no. 2020460. *Page 926