On May 17, 2006, Perry Petrey ("the husband") filed a petition for a rule nisi and to modify certain provisions of a judgment divorcing him from Marilou Generoso Petrey ("the wife"). The record on appeal does not contain copies of the June 27, 2005, divorce judgment or of a September 29, 2005, postjudgment order that altered some of the provisions of the divorce judgment. The record does set forth that part of the content of those orders that is relevant to the issues on appeal.[1] For the purposes of this opinion, *Page 1130 
we refer to the June 27, 2005, divorce judgment and to the September 29, 2005, postjudgment order collectively as "the divorce judgment."
The allegations in the parties' pleadings and the evidence presented at the hearing in this matter reveal the following pertinent facts. The divorce judgment, among other things, ordered the parties to sell their marital residence and, after the payment of the indebtedness on the property, to divide the proceeds of the sale evenly. The divorce judgment also required the husband to pay, in addition to the mortgage payments on the marital residence until it sold, $1,000 per month in periodic alimony, and it required the wife to transfer to the husband a business she owned that was located in the Philippines ("the business"). In addition, the husband was ordered to pay child support for at least one child born of the parties' marriage.[2]
In his May 17, 2006, petition, the husband alleged that the wife had not cooperated in transferring the business to him or in selling the marital residence. The husband sought to enforce the divorce judgment and to terminate his alimony and child-support obligations based on what he characterized as the wife's "contemptuous behavior."
The wife answered and asserted as an affirmative defense that the husband had failed to pay alimony as ordered in the divorce judgment and, therefore, that he came to the court with unclean hands. The wife also asserted a counterclaim in which she requested that the trial court hold the husband in contempt for failing to pay alimony and order the husband to pay the alimony for which he was in arrears. During the pendency of this matter, the husband's attorney filed a motion with the trial court requesting permission to withdraw from the husband's representation because, he stated, the husband wanted to represent himself during the rest of the trial-court proceedings. The trial court entered an order allowing the husband's attorney to withdraw.
The trial court held a hearing on the parties' claims on September 18, 2006; the husband appeared pro se at that hearing. The facts presented at the hearing are as follows. The husband testified that the wife had failed to transfer the business to him at the time of the September 18, 2006, hearing. The husband stated that the wife had instead transferred the business to the two sons sometime "before the trial." The husband never clarified whether that purported transfer had occurred before the hearing on his May 17, 2006, petition or before the divorce hearing, and no other evidence in the record indicated when that purported transfer of the business occurred. The husband testified that the wife had purposefully transferred the business to the sons so that it would be impossible for the husband to obtain it. The husband testified that, to the best of his knowledge, the business generates between $24,000 and $40,000 a year in income.
According to the wife, shortly after she was ordered to transfer the business to the husband pursuant to the divorce judgment, she signed a document ("the transfer document") that stated that she was giving the husband all "equities" in the business; the wife stated that she did not know who owned the business at the time she signed the transfer document. The wife testified *Page 1131 
that she sent the transfer document to the husband's attorney.
At one point during the September 18, 2006, hearing, the wife's attorney asked her how her sons "came to have ownership in the business," and the wife responded:
 "They didn't have ownership. They lost the business. It was making $2,000, they lost the business, and they started their own, but they lost the business. It was in my name, but they lost the business as we were going on to court. I didn't even know what's [sic] going on."
When the wife's attorney asked her to clarify what she meant by saying that her sons had "lost" the business, she responded:
 "They only had one account. . . . And that supports [the younger son in] his [college]. It's making $2,000 a month not $40,000. But then through that they have so many problems. And what I've heard is they lost the business, but I don't keep up with them. I don't keep up with them."
Later, the husband asked the wife a series of questions as follows:
 "[The husband:] Are you the owner of the business in the Philippines?
 "[The wife:] No.
 "[The husband:] You're not?
 "[The wife:] Yes.
 "[The husband:] So it's been transferred?
 ". . . .
 "[The wife:] No. I don't know. I don't really —
 "[The husband:] So you used to own it. And now you don't own it, and you don't know who owns it?
 "[The wife:] I don't know. I used to. I [gave] it to you. I signed it to you. I don't know who owns it now."
Subsequently, the trial court asked the wife whether the business had been "making between $24,000 and $40,000 a year during the marriage." The wife responded: "$2,000 a month, Your Honor. That supports [my son at] his school in [the Philippines]."
It appears from the record that the wife and the parties' minor daughter lived in the marital residence until two or three months before the September 18, 2006, hearing. The husband testified that the wife had allowed the house to fall into a state of disrepair. The husband admitted that he had not spent any money on maintenance for the house since he and the wife had separated.
The wife stated that Hurricane Ivan had broken some windows and had caused other damage to the marital residence. The wife testified that, at some point after the parties divorced, the air conditioner and the septic tank for the marital residence stopped functioning properly. The wife attributed the problems with the air conditioner and the septic tank to damage caused by the hurricane. However, the wife's testimony indicates that the insurance company determined that the hurricane had not caused that damage and that it had instead been caused by the age of the systems. The wife testified that she had paid to have the septic tank and the air conditioner repaired.
The husband testified that the payments on the indebtedness on the marital residence totaled approximately $1,700 per month and that he had made the payments on that indebtedness since the parties divorced. The husband admitted that he had not paid alimony to the wife as required by the divorce judgment. According to the husband, he could not afford to pay the indebtedness on the marital residence as well as the alimony payments. *Page 1132 
The husband alleged that the wife had not been cooperating in attempting to sell the residence. He stated that the wife had refused to cooperate with the real-estate agent that initially listed the house. The wife disputed that testimony and stated that after the original listing expired she attempted to hire another agent to list the house but that the husband did not agree to listing the house with a new agent due to additional fees that the parties would incur. The husband disputed the wife's statements with regard to her attempts to list the house with a new real-estate agent.
The husband stated that he felt that both his alimony and his child-support obligations should be reduced or terminated because, he alleged, the wife had not properly transferred the business to him and because he had had to make mortgage payments on the marital residence since the entry of the divorce judgment. The husband contended that the wife had failed to cooperate in the efforts to sell the marital residence, which had resulted in his continuing obligation to make payments on the indebtedness on the residence and had prevented the parties from dividing the proceeds of the sale of the residence as provided in the divorce judgment.
On September 28, 2006, the trial court entered a final judgment in which it granted the husband's May 17, 2006, petition in part and granted the wife's counterpetition in part. The trial court did not expressly deny some of the claims the husband had asserted in his petition. However, it is clear that, based on the relief it granted, the trial court intended to dispose of all the pending claims. Therefore, we conclude that the claims not expressly mentioned in the September 28, 2006, judgment were implicitly denied. M.C. Dixon Family P'ship, LLLP v.Envision Props., LLC, 911 So.2d 711, 715
(Ala.Civ.App. 2005). Accordingly, the September 28, 2006, judgment was a final judgment that supports the parties' appeals.
The September 28, 2006, judgment reads, in pertinent part:
 "1. The [husband's] petition for rule nisi and modification is granted in part, to-wit: [the wife] is found to be in contempt for failing and refusing to abide by this court's order regarding transfer of the business in the Philippines to the [husband]. [The wife] is ordered to transfer said business to the [husband] within 60 days. The [husband] is given a judgment against the [wife] in the amount of $32,000, for which let execution issue, for profits of the business through September 2006, and shall continue to pay the [husband] the sum of $2,667 per month beginning October 1, 2006, for each month that the business has not been conveyed. If the [wife] has not conveyed the business at the end of 60 days, the [husband] may take the legal steps necessary to have the business conveyed to him, and the [wife] is ordered to execute said conveyance or be subject to further sanctions for contempt. Further, [the wife] shall pay all legal costs associated with said conveyance.
 "2. [The wife's] counterclaim for contempt is hereby granted in part, to wit: [The husband] is found in contempt for failing and refusing to abide by this court's order regarding the payment of alimony. [The wife] is awarded a judgment in the amount of $12,000 through September 2006, for which let execution issue. Further, [the husband's][3] motion *Page 1133 
to modify or terminate alimony is hereby denied.
 "3. The court orders that the [husband] shall be invested with the sole authority to list, market, and sell the residence. All payments that have been made on the mortgage since September 2005 shall be reimbursed to the party that paid said payment prior to the division of the net proceeds, which shall be made pursuant to previous orders. Any sums expended to make repairs that are necessary to be made in order to sell the home shall be reimbursed to the party that paid for said repairs prior to the division of the net proceeds according to previous orders."
On October 30, 2006, the wife filed a timely postjudgment motion. That post-judgment motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., on January 28, 2007. We note that on February 5, 2007, the trial court purported to enter an order in which it intended to purge the wife of contempt based on a finding that the wife's transfer of the business to the husband was a "legal impossibility." However, because the February 5, 2007, order was entered after the wife's postjudgment motion had already been denied by operation of law, the trial court did not have jurisdiction to enter that order. Ex parte Caterpillar, Inc.,708 So.2d 142, 143 (Ala. 1997) ("If a trial court does not rule on a post-judgment motion within 90 days, it loses jurisdiction to rule on the motion."). Accordingly, because the trial court had lost jurisdiction over this matter after the wife's postjudgment motion was denied by operation of law, the order the trial court purported to enter on February 5, 2007, was void. Ex parte Chamblee, 899 So.2d 244, 249
(Ala. 2004).
The wife filed a notice of appeal that was timely with regard to the denial by operation of law of her postjudgment motion. The husband filed a timely cross-appeal. We note that in some parts of their briefs submitted to this court, the parties refer to the purported February 5, 2007, order. However, because that order was void, this court cannot consider it. Therefore, we address the arguments the parties have asserted in their appeals only in reference to the September 28, 2006, judgment.
We first address the wife's argument that the trial court erred by holding her in contempt for failing to comply with the provision in the divorce judgment requiring her to transfer the business to the husband.
 "`[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.'
 "Stack v. Stack, 646 So.2d 51, 56
(Ala.Civ.App. 1994)."
Stamm v. Stamm, 922 So.2d 920, 924 (Ala.Civ.App. 2004).
Rule 70A, Ala. R. Civ. P., governs the disposition of contempt proceedings in civil actions. Rule 70A(a)(2)(D) defines "civil contempt" as the "willfull, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with." "`Civil contempt seeks to compel or coerce compliance with orders of the court. . . . The sanction for civil contempt continues indefinitely until the contemnor performs as ordered.'" Hall v. Hall,892 So.2d 958, 961 (Ala.Civ.App. 2004) (quoting *Page 1134 State v. Thomas, 550 So.2d 1067, 1072 (Ala. 1989)).
The wife argues that the trial court could not have properly held her in contempt for failing to comply with the business-transfer provision in the divorce judgment because, she asserts, before the divorce trial was complete, she had already transferred the business to her sons. The wife argues that this fact made it "impossible" for her to perform as directed in the divorce judgment by transferring the business to the husband.[4] Indeed, as this court has stated, "inability to comply with the trial court's judgment is a valid defense in contempt proceedings." Stamm v. Stamm,922 So.2d at 924. However, this court has also stated that "the trial court's determination that a party's failure to comply with a judgment is willful and not due to an inability to comply, when based on ore tenus evidence, will be affirmed if it is supported by one view of that evidence." Id.
The wife maintains that the evidence was "undisputed" that she did not have the ability to transfer the business to the husband. However, the evidence submitted to the trial courtthat may be properly considered by this court supports a conclusion that the wife did have the ability to transfer the business to the husband. According to the wife's own testimony, she did not transfer the business to the sons at any point. Regarding the sons' ownership of the business, she stated: "They didn't have ownership." The wife testified multiple times throughout the September 18, 2006, hearing that she did not know who owned the business. In fact, the only evidence that the wife presented regarding a transfer of the business was her testimony that she had signed the transfer document granting all "equities" in the business to the husband. The husband directly contradicted the wife's claim that she had transferred the business to him. In an ore tenus proceeding before the trial court, "[t]he trial court is in the best position to observe the demeanor of witnesses and to assess their credibility." Yellow Freight Sys., Inc. v. Green612 So.2d 1209, 1211 (Ala.Civ.App. 1992). It was the duty of the trial court, as the trier of fact, to resolve any conflicts in the evidence. Harden v. Harden, 418 So.2d 159, 161
(Ala.Civ.App. 1982). Given the evidence presented by the parties that is properly before this court, the trial court could have reasonably concluded that, at the time of the September 18, 2006, hearing, the wife still owned the business. Therefore, the evidence supports a finding that the terms of the divorce judgment were "still capable of being complied with," Rule 70A(a)(2)(D), and that the wife had willfully refused to transfer the business to the husband. Accordingly, we cannot say that the trial court erred in finding the wife in contempt.See Hall v. Hall, 892 So.2d at 962 (affirming trial court's contempt finding when a husband had given a quitclaim deed to the wife for the parties' marital home but the divorce judgment had ordered the husband to give the wife a warranty deed).
The wife also argues on appeal that the trial court erred in requiring her to pay the husband $32,000, representing the profits of the business since the time the divorce judgment had been entered. She makes this argument as a part of her argument on the issue of contempt, contending only that the trial court erred because, according to the wife, it is impossible for her to transfer the business to the husband. The wife does not challenge the *Page 1135 
trial court's authority to enter the award or the amount of the award. We have already concluded that the evidence supports a finding of contempt with regard to the wife's failure to transfer the business to the husband. Accordingly, we must conclude that the wife has failed to demonstrate error with regard to this issue.
The wife next argues that the trial court erred in requiring that, upon the sale of the marital residence, the payments on the indebtedness on the marital residence made after September 2005 be reimbursed to the party who made such payments. The wife acknowledges that "[a] trial court has inherent power to enforce a division of property in accordance with a judgment of divorce," Hill v. Hill, 757 So.2d 468, 471
(Ala.Civ.App. 2000), and that "[a] court rendering a judgment has the inherent power to enforce the judgment and to make such orders as may be necessary to render it effective." Shanksv. Shanks, 628 So.2d 927, 928 (Ala.Civ.App. 1993). The wife argues, however, that the September 28, 2006, judgment did not simply enforce the divorce judgment. Rather, according to the wife, because the husband made all the payments on the indebtedness on the marital residence following the parties' divorce, the September 28, 2006, judgment effectively awards to the husband additional equity from the marital residence in spite of the fact that the divorce judgment had ordered that it be evenly divided between the parties. Based on the foregoing, the wife contends that the trial court impermissibly modified the property division set forth in the divorce judgment. The wife argues that because, as this court has held, "a trial court generally loses jurisdiction to amend its judgment 30 days after the entry of judgment," Henderson v. Koveleski,717 So.2d 803, 806 (Ala.Civ.App. 1998), the trial court did not have jurisdiction at the time of the September 28, 2006, judgment to direct that the husband be reimbursed for the mortgage payments he had made.
In support of her argument, the wife cites King v.King, 636 So.2d 1249 (Ala.Civ.App. 1994). However, Kingv. King is not dispositive. That case simply involved a trial court's order that directed that the parties' marital home be sold at auction due to the husband's failure to comply with a divorce judgment directing him to sell the home.King v. King, 636 So.2d at 1253-54. The wife's only assertion regarding King v. King seems to be that, because the trial court in that case did not order reimbursement expenses related to the home that were incurred after the divorce judgment, trial courts cannot enter such an order. However, we think it is evident that the fact that a trial court did not enter an order awarding a specific type of relief in one case does not prevent other trial courts from entering orders granting such relief in the future.
Further, Mathews v. Dillard, 646 So.2d 108
(Ala.Civ.App. 1994), contradicts the wife's claim that the trial court's September 28, 2006, judgment constituted an improper modification of its prior property division. In Mathews v.Dillard, the parties had been divorced by a judgment that incorporated a separation agreement entered into by the parties. That judgment ordered that a home owned by the parties be sold and that the expenses related to that home and another property incurred by the husband after the divorce be reimbursed to the husband in full from the proceeds of the sale of the home. About two and a half years after the divorce judgment had been entered, the wife petitioned the court for a modification of the divorce judgment, alleging that the husband had not sold the home or even listed it for sale. She also alleged that the husband intended not to sell the home until the parties' joint savings account was depleted *Page 1136 
in order to deprive the wife of her equity in the property. The home sold before the trial court held a hearing on the wife's petition. Mathews, 646 So.2d at 109.
When the trial court did hold a hearing on the wife's petition, the husband requested reimbursement as directed in the divorce judgment of $13,487.82 in expenses that he had incurred in maintaining the parties' properties. However, the trial court only allowed the husband to be reimbursed for approximately one-third of those expenses. On appeal, the husband argued that the trial court's order was an improper modification of the property division in the divorce judgment. This court affirmed, noting:
 "It is the law in this state that a property settlement agreement that is incorporated into a judgment of divorce is final and is not modifiable. Davis v. Cole, 399 So.2d 309
(Ala.Civ.App. 1981). In the present case, however, the agreement of the parties that was incorporated into the January 1990 divorce judgment stated that the Alcott Road house was to be sold; the wife presented evidence at the March 1993 hearing that the husband had not used reasonable diligence in selling the property. The house was not listed with a realtor until the wife's petition was filed in June 1992; the house was sold shortly thereafter — some three and one-half years after the final judgment. The husband failed to show that he had made even minimal efforts to sell the house.
 "Based on the above facts, we conclude that the trial court, rather than modifying the property award, was effectuating the intent of the original judgment, even though doing so resulted in the husband's bearing a greater share of the costs because of his excessive delay in selling the house."
Mathews v. Dillard, 646 So.2d at 109-10 (emphasis added).
In this case, the husband testified that the wife had not cooperated in the sale of the parties' marital residence and that, as a result, he had been required to pay mortgage payments from September 2005 until the September 18, 2006, hearing. Although the wife testified that she had cooperated in attempts to sell the residence, the trial court could have believed the husband's testimony over that of the wife. In ore tenus proceedings, "the trial court is the only judge of the facts and of the credibility of the witnesses." Carr v.Broyles, 652 So.2d 299, 301 (Ala.Civ.App. 1994). Therefore, as in Mathews, the trial court in this case could have reasonably concluded that the wife was at fault for the delay in selling the marital residence and that the best way to effectuate the intent of the divorce judgment was to order a disposition of the proceeds of the sale of the marital residence as if the parties had been able to sell the marital residence shortly after the entry of the divorce judgment. Accordingly, we affirm the portion of the trial court's judgment directing reimbursement for payments made on the indebtedness on the marital home.
The husband argues in his cross-appeal that the trial court erred in finding him in contempt for failing to pay the $1,000-per-month alimony awarded in the divorce judgment; in ordering him to pay $12,000 in unpaid alimony; and in failing to terminate his alimony obligation. However, regardless of the merit of the husband's arguments on appeal, we are unable to reach these issues. The husband's brief fails to comply with the requirements of Rule 28(a)(10), Ala. R.App. P., which requires an appellant's brief to include "[a]n argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, *Page 1137 
with citations to the cases, statutes, other authorities, and parts of the record relied on." In his brief on appeal, the husband fails to cite any authority to support his assertion that the trial court's judgment was in error. Accordingly, we affirm the trial court's judgment with regard to the issues raised by the husband in his cross-appeal. Jones v.Seibert, 624 So.2d 639 (Ala.Civ.App. 1993).
APPEAL — AFFIRMED.
CROSS-APPEAL — AFFIRMED.
PITTMAN and THOMAS, JJ., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.
[1] Along with her appellate brief, the wife submitted separate copies of those two orders to this court. However, because those orders were not included in the record on appeal, this court may not consider them. "The record on appeal cannot be supplemented or enlarged by the attachment of an appendix to an appellant's brief." Goree v. Shirley,765 So.2d 661, 662 (Ala.Civ.App. 2000).
[2] The record indicates that the wife has three children. The husband adopted the wife's oldest son, the younger son was born shortly after the parties' marriage, and a daughter was born of the parties marriage. The record does not indicate when or if the sons had attained the age of majority.
[3] The trial court's order states, in part, "defendant's motion to modify or terminate alimony is hereby denied." Although the wife was the defendant at trial, it is evident that the trial court's use of the word "defendant's" was a typographical error and that it intended to refer to the husband and not the wife.
[4] In making this argument, the wife refers this court to the trial court's findings in the February 5, 2007, order. However, as explained earlier, this court may not consider the findings contained in that order.