[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 281 
 On Application for Rehearing
The opinion of February 24, 2006, is withdrawn., and the following opinion is substituted therefor.
William Eugene Schiesz, Jr. ("the husband"), and Catherine M. Schiesz ("the wife") were divorced by a September 26, 2001, judgment of the trial court; that judgment incorporated an agreement reached by the parties.
On January 22, 2002, the husband filed a petition to modify his child-support and alimony obligations; he also sought to have the wife held in contempt with regard to matters not relevant to the issues on appeal. The husband also sought to "stay" his child-support and alimony obligations. On March 22, 2002, the wife filed a counterpetition, seeking to have the husband held in contempt for his failure to pay child support and alimony; she later amended that petition to seek, among other things, an increase in the husband's child-support obligation.
Judge Larry Mack Smith received ore tenus evidence on May 21, 2003, and June 16, 2003. On January 14, 2005, Judge Smith entered a judgment based on his receipt of that ore tenus evidence and on "updated financial information from both parties . . . and the State of Alabama Child Support Enforcement Division Court Order Payment Summary." In that January 14, 2005, judgment, Judge Smith, among other things, granted the husband a temporary modification of his child-support and alimony obligations for the period between February 1, 2002, and December 31, 2002. Judge Smith also increased the husband's child-support and alimony obligations effective January 1, 2003. Judge Smith concluded that the husband had overpaid his "support" obligations and ordered that that overpayment be offset against future alimony amounts owed to the wife. After the entry of the January 14, 2005, judgment, Judge Smith left office. The wife subsequently filed a post-judgment motion, which was assigned to a new trial judge, Judge Jimmy Sandlin.
On May 9, 2005, the parties filed, pursuant to Rule 59.1, Ala. R. Civ. P., an agreement to extend the time in which Judge Sandlin could rule on the wife's post-judgment motion to June 14, 2005; on *Page 282 
June 14, 2005, the parties filed a second agreement pursuant to Rule 59.1, agreeing to again extend the time in which Judge Sandlin could rule on the wife's motion.[1] On July 12, 2005, Judge Sandlin entered an order setting aside the temporary reduction in the husband's child-support and alimony obligations and reaffirming the trial court's modification of those obligations effective January 1, 2003. As a result, Judge Sandlin concluded that the husband owed a support arrearage, including unpaid counseling fees, totaling $12,024.25; Judge Sandlin ordered the husband to repay that arrearage at a rate of $500 per month. The husband timely appealed.[2]
The record indicates the following facts pertinent to this appeal. At the time of the parties' September 26, 2001, divorce, the husband was employed at Morgan Keegan. It is undisputed that at the time of the parties' divorce the husband was earning a salary from Morgan Keegan but that on December 31, 2001, he was to stop receiving a salary and begin being paid based solely on commissions from his production as a stockbroker. The husband admitted that at the time he entered into the agreement upon which the divorce judgment was based he knew that his guaranteed salary was to cease at the end of 2001. In response to questions regarding whether his supervisor had discussed with him the fact that he had skipped sales meetings, had failed to service clients, and was not sufficiently productive, the husband repeatedly testified that he could not recall any such conversations. The wife testified that at the time the parties entered into the agreement upon which the divorce judgment is based the husband expected his income to decrease at the time his salary terminated and he began to be paid based on his commissions.
The husband testified repeatedly at the hearing in this matter that at the time of the divorce he was receiving a gross monthly salary of $10,000. However, the September 26, 2001, divorce judgment states that the husband's gross monthly income at the time of the divorce was $9,000. At the time of the parties' divorce, the wife earned $1,761 per month.
The husband testified that he received his last salary payment, representing his salary for December 2001, from Morgan Keegan in January 2002. The husband filed his petition for a modification on January 22, 2002; in that petition, the husband *Page 283 
alleged he had suffered a "significant reduction" in his income.
The husband had remarried at the time he filed his January 22, 2002, petition for a modification. At that time, the husband had entered into a partnership agreement with his new wife ("Sandy"), who was also employed as a stockbroker with Morgan Keegan. Initially, the husband and Sandy were to split the revenues of their joint sales on a 50-50 basis, but they modified that agreement within a few days to provide that the husband would receive 40% of the revenue generated from that partnership. The husband presented evidence indicating that approximately 90% of the commissions or revenue generated by the partnership resulted from Sandy's clients and that he had not successfully built a strong client base of his own. The husband also testified that his income from Morgan Keegan after January 2002 would have been much lower had he not entered into the partnership agreement with Sandy.
In spite of the partnership with Sandy, the husband's income between February 2002 and September 2002 was greatly diminished from what he had earned while on salary. The husband's income based on commissions for that period was as follows: $2,172 in February 2002; $2,618.39 in March 2002; $497.94 in April 2002; $2,819.77 in May 2002; $2,712.87 in June 2002; $1,778.54 in July 2002; and $600 in August 2002. In July or August 2002, the husband exercised a stock option and received approximately $17,500 in proceeds. Morgan Keegan terminated the husband's employment on September 9, 2002.
The husband testified that he was unemployed from September 9, 2002, until November 2002, when he was hired by SunTrust in Florida. The husband worked for SunTrust for one month, during which time he earned a salary of $5,000. In addition, the husband received a one-time payment of $10,000 from SunTrust. The husband testified that the $10,000 was a "relocation bonus" to pay for his expenses for the move to Florida. In December 2002, the husband left his employment with SunTrust in order to accept employment with First Tennessee Brokerage ("First Tennessee").
The husband testified that he earns approximately $10,750 per month, including salary and commissions, from his employment with First Tennessee. In addition, the husband received a net amount of $25,000 from First Tennessee in January 2003. The husband testified that the $25,000 was to pay for his moving expenses. An exhibit submitted into evidence at the hearing in this matter indicates that First Tennessee characterized the $25,000 as a "sign-on bonus." The husband insisted that he spent the entirety of both the $10,000 bonus and the $25,000 bonus on moving-related expenses. The husband claimed only $4,200 in moving-related expenses on his 2002 federal income-tax return.
In support of his claim that he spent exactly $25,000 on moving-related expenses in accepting his employment at First Tennessee, the husband submitted into evidence an exhibit in which he claimed to have spent $4,250 to rent one apartment from December 2002 to April 30, 2003, and another $2,065 to rent another apartment from March 2003 to the end of April 2003. The husband claimed that he had paid more than $2,000 in deposits for the two apartments and approximately $350 additional moving expenses for the move between the two apartments. The husband claimed, among other things, $5,800 in "packing expenses," which he admitted he considered to have been paid to himself for doing some of the work related to the moves, and $3,849.01 for *Page 284 
"miscellaneous relocation expenses" for which he could not account.
After the entry of the September 26, 2001, divorce judgment, the husband made child-support payments for the months of October and November 2001; those payments were late. The husband did not pay child support in December 2001, but he made two child-support payments in January 2002. After he filed his January 22, 2002, petition for a modification and his motion for a stay of his support obligations, the husband failed to pay child support for several months.
During the pendency of this action, the wife filed a third-party claim against Morgan Keegan, the husband's former employer, alleging, among other things, that Morgan Keegan had failed to withhold child support from the husband's earnings as required by an October 2001 withholding order. It is undisputed that Morgan Keegan failed to withhold child support from the husband's earnings for the months of February, March, and April 2002, months in which the husband failed to pay child support or alimony. After the wife notified Morgan Keegan of the husband's failure to pay his child-support obligation, Morgan Keegan began deducting child support from the husband's earnings; those deductions continued through July 2002.[3] Although he did not make any contribution toward the children's support in March or April 2002, the husband withdrew from his money-market account a total of $2,175.16 in those months.
In August 2002, there was no deduction for child support, apparently because the husband earned only $600 from Morgan Keegan that month. It is undisputed, however, that in June 2002 the husband received $17,496.75 from his exercise of the stock option; that money was deposited into his money-market account. The husband immediately withdrew $12,800 from that account; he withdrew an additional $500 in July 2002. The husband did not present any evidence regarding how he spent those amounts. In August 2002, the husband withdrew the remaining $4,199 from the money-market account to meet his expenses; however, he made no contribution toward the children's support for that month.
After he was terminated from his employment at Morgan Keegan in September 2002, the husband paid $243.72 in child support in October 2002. Although the husband became employed in November 2002, he did not pay child support for November or December 2002. Between November 2002 and January 2003, the husband received a total of $35,000 in lump-sum payments or bonuses from his employers. The husband paid $1,860.91 in child support in January 2003 and $854.30 in February 2003.
In the spring of 2003, in response to a request by the wife, Judge Smith entered an order requiring First Tennessee to withhold 50% of the husband's earnings "to be credited to the [husband's] alimony[4] *Page 285 
and child-support obligations." On June 17, 2004, Judge Smith modified that order and required the husband's employer to withhold from the husband's earnings $2,150 for child support and $1,725 for his alimony obligation.[5] The husband maintained at the hearing in this matter that as a result of those two orders he had repaid any past arrearages and had overpaid his support obligations; that argument was based on the assumption that the court would award a temporary downward modification, retroactive to the date of the filing of the husband's January 22, 2002, petition, of both of the husband's support obligations.
The husband paid three of the alimony payments due in 2001, and he made only two $1,199 alimony payments in 2002. It appears that the husband's payments of alimony resumed in 2003 pursuant to the two withholding orders discussed above. We note that the husband admitted that on his 2002 federal income-tax return he had claimed to have made $6,800 in alimony payments in 2002 and that he also overstated his mortgage-interest deduction on that tax return.
The record indicates that the husband "maxed out" his monthly contributions to his own 401 (k) retirement account even in months when he made no contribution toward either of his support obligations. The husband has also failed to reimburse the wife for the children's medical expenses not covered by insurance. The husband has participated in a medical-reimbursement plan, and he admitted that on more than one occasion, although the wife had paid for the children's medical expenses, he had deposited the checks for reimbursement of those expenses into his bank account and kept the money. The husband testified that he "did not know" whether he kept the money from the medical-reimbursement checks during months in which he had failed to contribute to the children's support.
The wife stated that her monthly gross income is $2,093.75. She testified that her monthly living expenses totaled $3,752 and that the children's monthly expenses totaled $2,237. We note that the wife included in her monthly living expenses a monthly credit-card-debt payment in the amount of $1,000 that should be eliminated or greatly reduced by the resolution of one of her claims seeking to enforce certain provisions of the divorce judgment. The wife testified that during the pendency of this matter she has had to borrow money from her mother in order to meet the living expenses for the children and her.
The January 14, 2005, judgment entered by Judge Smith reduced the husband's child-support obligation for the period February 1, 2002, through December 31, 2002, to $775 per month. The January 14, 2005, judgment also reduced the husband's alimony obligation to $372 per month for that same period. The January 14, 2005, judgment modified the husband's child-support and alimony obligations beginning January 1, 2003, to $2,150 and $1,725, respectively. Based on that temporary modification, Judge Smith concluded that the husband had overpaid his support obligations and was entitled to an offset of that amount against his alimony obligation.
Judge Sandlin, in entering that part of his July 12, 2005, judgment in which he determined that the husband was not due any reduction in his support obligations for the period between February 1, 2002, and December 31, 2002, made the following factual findings: *Page 286 
 "a. The [husband] was aware of his potential change in income at the time he agreed to the support obligations;
 "b. The [husband] had the ability to earn at [a] higher rate of income than he actually received during the period in question;
 "c. The [husband] manipulated his income by decreasing his interest in the business partnership he formed with his new wife;
 "d. The [husband] received stock options and bonuses during this period in question which offset much of his `loss of income,'"
In the July 12, 2005, judgment, Judge Sandlin found the portion of the earlier judgment that modified the husband's support obligations effective January 1, 2003, to be reasonable, and he refused to alter that modification. Based on his determination that there should be no temporary modification of the husband's support obligations, Judge Sandlin determined that the husband owed a child-support arrearage in the amount of $574.25 and an alimony arrearage in the amount of $7,250, plus interest; Judge Sandlin ordered the husband, in addition to his support obligations, to make monthly payments of $500 toward the repayment of the arrearages.
On appeal, the husband purports to raise five separate issues, two of which can be summarized as challenging that portion of the July 12, 2005, judgment that vacated the temporary modification of the husband's support obligations in the January 14, 2005, judgment. The husband contends that that portion of the July 12, 2005, judgment is not supported by the evidence and that the temporary modification of his support obligations contained in the January 14, 2005, judgment should be reinstated. The husband argues that between February 1, 2002, and December 31, 2002, he had no ability to pay the level of support required by the parties' divorce judgment.
In making his argument on this issue, the husband contends that Judge Sandlin's factual findings in his July 12, 2005, judgment are not supported by the evidence. We disagree. Even the husband acknowledged that he was aware at the time of the parties' divorce that his income was likely to change after December 31, 2001. The wife testified that the husband anticipated that his income would decrease. The husband's supervisor at Morgan Keegan testified that he had had discussions with the husband regarding, among other things, the husband's lack of productivity and his concerns regarding the husband's income when it was to be based solely on commissions. The husband stated that he did not recall having those discussions with his supervisor.
The evidence also supports Judge Sandlin's determination that the husband had the potential to earn more income than he did in 2002. It is clear from the evidence pertaining to the husband's income both before and after 2002 that the husband had such earning potential.
The evidence also supports Judge Sandlin's conclusion that the husband manipulated his income from his partnership with his new wife. The husband asserts that his income would have been lower had he not entered into the partnership agreement with his new wife. However, it appears that the husband reduced his percentage share of the partnership at approximately the same time he filed his petition seeking to reduce his child-support and alimony obligations. Although the husband disputes that he attempted to manipulate his income, it does not appear that Judge Sandlin was plainly or palpably wrong in reaching his determination. See Sellers v. Sellers, 893 So.2d 456
(Ala.Civ.App. 2004). Further, the husband's *Page 287 
credibility can reasonably be called into question considering much of the other evidence contained in the record and detailed in this opinion.
The evidence in the record on appeal also supports Judge Sandlin's conclusion that the husband received more than $17,000 in stock options and $35,000 in lump-sum payments or bonuses from his employers and that those amounts offset much the husband's loss of income. The husband failed to explain how he spent $12,800 of the money from his exercise of the stock options; the remaining amount, which was approximately $5,000, was spent by the husband to meet expenses in a month when he made no contribution toward his child-support obligation. Further, the evidence supports a conclusion by Judge Sandlin that the husband's explanation of how he spent the $25,000 signing bonus was not credible.
The husband cites Corsino v. Corsino, 904 So.2d 1261
(Ala.Civ.App. 2004), in support of his assertion that Judge Sandlin erred in requiring him to pay a level of support that he maintains he could not afford. In Corsino v. Corsino, supra, the husband agreed at the time of the parties' divorce to make certain child-support, alimony, and private-school-tuition payments. The husband in that case testified that he had expected his income after the divorce to increase due to a number of factors but that for various reasons his income had not increased to the level he had anticipated. Instead, the husband's income remained the same, and the combined support obligations exceeded his ability to pay. This court reversed the trial court's refusal to modify the husband's support obligations, concluding that "`[t]he law will not require the doing of a vain or useless thing,'" i.e., the payment of support obligations that the husband could not afford.Corsino v. Corsino, 904 So.2d at 1265 (quotingMenton v. Menton, 405 So.2d 940, 942
(Ala.Civ.App. 1981)).
The husband in this case refers in his brief on appeal to his "financial hopes," apparently referring to hopes that he could meet his support obligations based on his income from his commissions from Morgan Keegan. However, there is no evidence in the record indicating that at the time he entered into the agreement upon which the trial court based its divorce judgment the husband expected his income to increase or even to remain the same. Although the husband contends that he could not meet his support obligations during much of 2002, the trial court clearly concluded otherwise. It appears that the trial court imputed income to the husband when it refused to modify his child-support or alimony obligations.
A court may impute income to a parent upon a finding that the parent is voluntarily unemployed or underemployed. Rule 32(B)(5), Ala. R. Jud. Admin. A trial court does not have to make a specific finding that the parent is voluntarily unemployed or underemployed; such a finding may be implicit in the trial court's judgment. Berryhill v. Reeves,705 So.2d 505, 507 (Ala.Civ.App. 1997); see also TransamericaCommercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375,378 (Ala. 1992) (the trial court is presumed to have made those factual findings necessary to support its judgment). In this case, however, we conclude that Judge Sandlin, although he did not specifically use the term "voluntarily underemployed," made an explicit, rather than an implicit, finding that the husband was voluntarily underemployed. Judge Sandlin specifically determined that the husband had the potential to earn more income in 2002 than he actually received. We also conclude that that determination is supported by the evidence contained in the record on appeal, in particular *Page 288 
the evidence indicating that within a short time of leaving his employment with Morgan Keegan the husband received two other jobs that paid more than the rate he received when he was being paid on a commission basis at Morgan Keegan. Based on the foregoing, we cannot say that the husband has demonstrated that Judge Sandlin erred in refusing to reduce his child-support or alimony obligations during the period between February 1, 2002, and December 31, 2002.
The husband also argues that both the January 14, 2005, and the July 12, 2005, judgments are unsupported by the evidence with regard to the provisions that increase his child-support and alimony obligations effective January 1, 2003. In support of his argument, the husband cites authority only in support of general propositions of law; he does not attempt to apply that law to the facts of this case. Therefore, his argument comes dangerously close to failing to comply with the requirements of Rule 28, Ala. R.App. P. Out of an abundance of caution, however, we will address the husband's argument.
 "Modification of child support is a matter within the trial court's discretion and the trial court's ruling on that matter will not be disturbed on appeal unless there is an abuse of discretion. Bass v. Bass, 475 So.2d 1196, 1198 (Ala.Civ.App. 1985). Where evidence is presented ore tenus, the trial court's judgment based on that evidence is presumed correct, particularly in matters concerning child support, and it will be reversed only upon a showing that the trial court abused its discretion or that its determination is plainly and palpably wrong. Wilson v. Hall, 628 So.2d 728
(Ala.Civ.App. 1993)."
Puckett v. Summerford, 706 So.2d 1257, 1257
(Ala.Civ.App. 1997).
The husband argues only that the application of the Rule 32, Ala. R. Jud. Admin., child-support guidelines demonstrates that there is less than a 10% change between the previous child-support award and the amount the husband contends is due under those guidelines given the parties' current income levels. Therefore, according to the husband, a modification of child support is not warranted. The husband is not correct that child support may not be modified absent a 10% change in the support-paying parent's child-support obligation. SeeBeavers v. Beavers, 717 So.2d 373, 376 (Ala.Civ.App. 1997) ("The trial court may modify a support obligation where the 10 per cent variation is not present, but where there has been a material change in the parties' circumstances.").
Further, in this case, child support cannot be calculated by the application of the Rule 32 child-support-guidelines schedule. The husband's monthly income is $10,750 and the wife's monthly income is $2,093.75; thus, the parties' combined income exceeds the $10,000 per month uppermost limit of the child-support-guidelines schedule. When the parties' combined monthly gross incomes exceeds $10,000, the trial court may use its discretion in establishing a child-support obligation. Rule 32(C)(1), Ala. R. Jud. Admin.; Dyas v. Dyas,683 So.2d 971, 972 (Ala.Civ.App. 1995) (opinion on rehearing). "This court has held, however, that a trial court's discretion is not unbridled and that the amount of child support awarded must relate to the reasonable and necessary needs of the children as well as to the ability of the obligor to pay for those needs."Dyas v. Dyas, 683 So.2d at 973. The husband has not argued to this court that the amount of the child-support award is excessive considering the reasonable and necessary support needs of the *Page 289 
children or that he cannot, considering his current level of income, afford the child-support obligation imposed by the trial court effective January 1, 2003. We decline to make those arguments on behalf of the husband. It is not the function of this court to advocate a position on behalf of an appellant or to create a legal argument for the appellant. McLemore v.Fleming, 604 So.2d 353 (Ala. 1992); Spradlin v.Spradlin, 601 So.2d 76, 79 (Ala. 1992).
Similarly, we find the husband's argument that Judge Smith and Judge Sandlin erred in modifying his alimony obligation to be unpersuasive.
 "`"It is well established in Alabama that the modification of an alimony provision based upon changed circumstances is a matter that rests within the [trial] court's sound discretion."' Stinson v. Stinson, 729 So.2d 864, 868 (Ala.Civ.App. 1998) (quoting Ex parte Millard, 683 So.2d 1002, 1003 (Ala. 1996)).
 "`The modification of periodic alimony is a, matter within the discretion of the trial court, and on appeal its judgment on that matter is presumed correct. . . . The trial court may modify an award of periodic alimony if the petitioner proves that a material change of circumstances has occurred since the last award was made. The trial court may consider several factors, including the earning capacity of each spouse, the recipient's needs and the payor's ability to meet those needs, and the estate of each spouse.'
 "Kiefer v. Kiefer, 671 So.2d 710, 711
(Ala.Civ.App. 1995) (citations omitted). Furthermore, this court is not permitted to reweigh the evidence on appeal or to substitute its judgment for that of the trial court. See Ex parte Bryowsky, 676 So.2d 1322 (Ala. 1996)."
Sellers v. Sellers, 893 So.2d at 461.
With regard to alimony, the husband argues in his brief on appeal only that his alimony obligation should have remained the same percentage of his current income as the previous alimony award was to his income at the time of the parties' divorce. He briefly, without any specific argument, contends that any modification of the alimony obligation is not supported by the evidence. However, the trial court's decision regarding the modification of alimony must be afforded a presumption of correctness. Sellers v. Sellers, supra. We cannot discern from the husband's argument how he contends Judge Smith and Judge Sandlin abused that discretion. Based on our standard of review and the arguments contained in the husband's brief on appeal, we cannot say that the husband has demonstrated that the trial judges erred in modifying his alimony obligation.
The husband's argument that he is entitled to a credit against his child-support or alimony obligations is based on his contention that Judge Sandlin erred in reaching his July 12, 2005, judgment; because we have rejected that contention, we need not reach this issue. The husband does not contend that, if we should find Judge Sandlin's July 12, 2005, judgment is supported by the evidence, which we do, the trial court erred in its calculation of his support arrearages.
The husband also lists in the "statement of the issues" portion of his brief an argument that Judge Sandlin did not have authority to set aside any portion of the January 14, 2005, judgment entered by Judge Smith because Judge Smith had heard ore tenus evidence. The husband did not object before Judge Sandlin to Judge Sandlin's consideration of the wife's *Page 290 
postjudgment motion. "This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So.2d 409, 410
(Ala. 1992).
Further, the husband fails to develop an argument with regard to this issue in his brief on appeal. The husband's failure to object before Judge Sandlin and his failure to argue this issue before this court precludes this court's consideration of the issue. Rule 28(a)(10), Ala. R.App. P.; Andrews v. MerrittOil Co., supra.
The wife's request for an attorney fee on appeal is granted in the amount of $2,000.
APPLICATION GRANTED; OPINION OF FEBRUARY 24, 2006, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
CRAWLEY, P.J., and PITTMAN and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] On original submission, the May 9, 2005, agreement filed pursuant to Rule 59.1, Ala. R. Civ. P., was omitted from the record on appeal. This court asked the parties to brief the issue whether the appeal was timely filed. The parties did so, but neither party sought to supplement the record on appeal to include the May 9, 2005, agreement. Therefore, on original submission, this court dismissed the appeal as untimely filed because only the June 14, 2005, agreement was contained in the record on appeal. See Moore v. Moore, 910 So.2d 137,140 (Ala.Civ.App. 2004) (holding that "any extension of the 90-day period provided in Rule 59.1[, Ala. R. Civ. P.,] `must be of record before the 90-day period expires, because any purported extension after the 90 days is a nullity'" (emphasis omitted)). After the release of this court's opinion on original submission, the wife filed a motion in the trial court seeking to supplement the record to include the May 9, 2005, agreement; the husband opposed that motion. On March 8, 2006, the trial court granted the wife's motion to supplement the record. "We have decided to allow the supplement to the record even at this point because it appears to be within the purpose of Rule 10(f)[, Ala. R.App. P.,] to do so." Walker v. Eubanks,424 So.2d 631, 634 (Ala.Civ.App. 1982) (opinion on rehearing). The wife, relying on the record as supplemented pursuant to the March 8, 2006, order, filed an application for rehearing in this court; the husband opposed that application.
[2] See note 1.
[3] We note that the wife later recovered from Morgan Keegan $3,453.34 for child support from the husband for the months of February, March, and April 2002. A representative for Morgan Keegan explained that Morgan Keegan could withhold only up to 50% of the husband's income and that 50% of the husband's income for those months would not satisfy the husband's full child-support obligation for those months. The $3,453.34 was the maximum amount Morgan Keegan could have withheld from the husband's income during the three months. Judge Smith ordered that the husband receive a credit against his child-support obligation for that $3,453.34.
[4] This court has not been asked to review whether a court may issue a withholding order with regard to the payment of an alimony obligation.
[5] See note 4.