On Application for Rehearing

THOMAS, Judge.
The opinion of June 17, 2011, is withdrawn, and the following is substituted therefor.
Tony C. Williams appeals from a protection-from-abuse order entered by the Madison Circuit Court, which resulted from a petition filed by Dorothy O. Harris pursuant to the Protection from Abuse Act, Ala. Code 1975, § 30-5-1 et seq. We affirm.

Facts and Procedural History

Williams and Harris are married. On November 9, 2010, Harris filed a petition for protection from abuse in the trial court. In her petition, Harris stated that on November 8, 2010, Williams had pushed her down on concrete, causing her to sustain bruising and scratches on her arms, legs, and buttock. Further, Harris stated in her petition that Williams had yelled at her, had called her crazy, and had pushed her. On the same day that Harris filed her petition, November 9, 2010, the trial court entered an ex parte order enjoining Williams from threatening to commit, or committing, acts of abuse against Harris, R.L., or T.W. (R.L. and T.W. are hereinafter referred to collectively as “the minor children”); ordering Williams to stay away from the marital residence and the minor children’s school; prohibiting Williams from transferring, concealing, encumbering, or otherwise disposing of the parties’ property; directing Williams to be removed from the marital residence; awarding temporary custody of the minor children to Harris; and setting a hearing on the petition for November 15, 2010.
The parties had been married for years, but during late 2010 the relationship had begun to deteriorate. Harris has lupus and has suffered from serious health issues. Moreover, Williams and Harris had recently had constant arguments, resulting in the police having been called to the marital residence on numerous occasions. Harris had changed the locks on the marital residence twice in order to keep Williams out of the home. Due to the fact that the police had been called regarding *276 Harris’s changing of the locks, Williams and Harris had agreed to a special arrangement to share the marital residence. The arrangement allowed Williams use of the downstairs portion of the marital residence, while reserving the upstairs portion for Harris’s use. However, the kitchen and laundry area were located downstairs, which required Harris to enter the downstairs level from time to time. On November 8, 2010, the parties had an altercation, which led to the November 9, 2010, petition for protection from abuse.
The trial court held a hearing on the petition on November 15, 2010. Williams and Harris were the only witnesses to testify at the hearing. They both appeared pro se. Harris testified that, immediately preceding the altercation, Williams was downstairs and was about to take the television, belonging to the parties’ son, and the DirectTV brand satellite-television box, which was registered in Harris’s name. Harris testified that she told Williams that he could not leave the marital residence with the television and DirectTV box, which, she said, caused Williams to begin yelling, screaming, and cursing. According to Harris, during the verbal outburst, Williams grabbed the television and Harris caught its cord. Hams testified that Williams then pulled the television and pushed Harris onto the concrete floor. During the fall, Hands said, she hit her leg on a table and received scratches and bruises from the table and the concrete floor. According to Harris, she had kept hold of the television cord throughout the fall, and she continued to hold it for the next 45 to 50 minutes before returning upstairs.
Williams gave a different account of the November 8, 2010, altercation. Williams testified that he had been sitting on the couch with Harris’s brother watching a football game on television when Harris had sent their son downstairs to remove the DirectTV box, which was connected to the television. Williams stated that he sent the son back upstairs without the DirectTV box and that, about 15 minutes later, Harris came downstairs to take the television and DirectTV box. According to Williams, Harris pulled the television off the shelf and Williams grabbed the television in order to keep it from crashing to the floor. Williams testified that Harris then grabbed the television cord and refused to let go of it. According to Williams, Harris held onto the cord, sitting on the floor at Williams’s feet for about two hours. According to Williams, Harris finally released the cord after her hand had started to swell from holding onto it so tightly for so long. Williams testified that after Harris released the cord, Williams set up the television with an antenna. For the remainder of the night, Williams testified, Harris continued to visit the downstairs area, flicking the lights on and off, yelling that Williams was trying to steal her stuff, turning on and off the washing machine and dryer, and moving her quilts and possessions into her bedroom. The next day the police removed Williams from the residence based upon the ex parte protection-from-abuse order. Williams has not entered or visited the marital residence since being removed.
The trial court recognized that there were some discrepancies between Harris’s original account of the incident during the ex parte hearing on November 9 and the account she gave at the final hearing on November 15. However, upon questioning by the trial court, Harris testified that Williams had pushed her down onto the concrete floor and then pulled her when he grabbed hold of the television cord, which, she said, she was already holding.
After hearing ore tenus evidence, the trial court entered a final protection-from- *277 abuse order, finding that domestic violence had occurred and enjoining Williams from living at or visiting the marital residence.

Issues

Williams raises two issues in his appeal: (1) whether failing to give an oath to the witnesses deemed their testimony inad-missable and (2) whether the trial court had before it sufficient evidence to support its final order.

Standard of Review

“1 “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).

Analysis

First, Williams argues that the testimony from the final hearing is inadmissable because the trial court failed to give an oath to either Williams or Harris. Accordingly, because the testimony is inadmissa-ble, Williams contends, there is no admissible evidence to support the trial court’s protection-from-abuse order. Williams rests his entire argument regarding the inadmissability of the testimony on Rule 603, Ala. R. Evid., and this court’s recent decision in Alabama Department of Industrial Relations v. Smith, 62 So.3d 1046, 1049 (Ala.Civ.App.2010). However, this argument is misguided and without merit.
Rule 603 provides:
“Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness’s conscience and impress the witness’s mind with the duty to do so.”
Rule 603 of the Alabama Rules of Evidence is modeled after the same rule of the Federal Rules of Evidence, and it is well established that “cases construing the federal rules are to be considered authority for this state’s courts when construing the Alabama rules.” Shoney’s, Inc. v. Barnett, 773 So.2d 1015, 1029 (Ala.Civ.App.1999); see Rule 102, Ala. R. Evid., Advisory Committee’s Notes (stating that “cases interpreting the Federal Rules of Evidence will constitute authority for construction of the Alabama Rules of Evidence”). However, cases interpreting the federal rules are persuasive rather than mandatory authority. Rule 102, Ala. R. Evid., Advisory Committee’s Notes.
The plain language of Rule 603 mandates that an oath be administered before a witness is allowed to testify. However, both federal courts and Alabama courts have held that the failure to give such an oath or affirmation is deemed waived if not objected to in the trial court. Merton v. State, 500 So.2d 1301 (Ala.Crim.App.1986); Saxton v. State, 389 So.2d 541, 543 (Ala.Crim.App.1980) (“If a witness is allowed to give evidence before the jury *278 without first being lawfully sworn, it is the duty of the judge, as soon as it is called to his attention, to immediately administer a proper oath to the witness.”); and United States v. Odom, 736 F.2d 104, 115 (4th Cir.1984). More specifically, the Court of Criminal Appeals has held that, “just as a defendant may waive any impediment to a witness’s capacity to testify by failing to object, Conner v. State, 52 Ala.App. 82, 87, 289 So.2d 650 (1973), cert. denied, 292 Ala. 716, 289 So.2d 656 (1974), so may he waive the failure to place a witness under oath by the failure to object.” Merton, 500 So.2d at 1306; Green v. State, 586 So.2d 54, 55 (Ala.Crim.App.1991) (“By failing to object, the appellant waived the issue of any alleged failure to place the witnesses under oath. Merton v. State, 500 So.2d at 1306.”). The requirement that a party must object to any unsworn testimony at trial is not a novel concept. See Murphy v. State, 25 Ala.App. 237, 239-40, 144 So. 114, 116-17 (1932) (“wherever it appears that a witness is not so sworn (or affirmed), and the party against whom the witness is offered makes timely objections, such testimony must be excluded”).
Moreover, the federal courts also follow the line of reasoning that failure to object waives any issue regarding the admissibility of unsworn testimony. See United States v. Perez, 651 F.2d 268, 273 (5th Cir.1981) (“It has long been the general rule that even a failure to swear a witness may be waived. This may occur either by knowing silence and an attempt to raise objection after verdict or by the mere failure of counsel to notice the omission before completion of the trial.” (footnotes omitted)). Therefore, established Alabama caselaw and federal caselaw interpreting Rule 603 do not support Williams’s contention that the failure to administer an oath to a witness renders such witness’s testimony inadmissable, absent an objection in the trial court.
Furthermore, this court’s decision in Smith, supra, which Williams relies upon on appeal, is distinguishable from the present case in several significant ways. In Smith, the issue on appeal regarded unsworn testimony given during a summary-judgment hearing. Smith, the plaintiff in that case, did not file a response to the summary-judgment motion but appeared pro se at the hearing and offered oral legal arguments against the entry of a summary judgment in favor of the defendant. At the hearing, each side argued their position, and, in addition, Smith made numerous representations before the court that amounted to unsworn “ ‘mere allegations or denials]’ of the [defendant’s] allegations and evidence.” 62 So.3d at 1049. As our supreme court noted in Fountain Finance, Inc. v. Hines, “ ‘[m]otions and arguments of counsel are not evidence.’ ” 788 So.2d 155, 159 (Ala.2000) (quoting Williams v. Akzo Nobel Chems., Inc., 999 S.W.2d 836, 845 (Tex.App.1999)). Thus, in Smith, Smith was making legal arguments and did not take the witness stand to offer factual testimony, as did the witnesses in the instant case. Further, in Smith, there is no mention of whether a party objected to the use of unsworn testimony at the trial court level. Therefore, the procedural posture and circumstances in this case are unlike Smith.
In this case, the record does not show that Williams or Harris were sworn as witnesses. Further, the record shows that there was no objection to the failure to swear the witnesses by either party. Therefore, the issue that neither party was sworn is being raised for the first time on appeal.
This court adopts the rationale of the Court of Criminal Appeals and the federal courts that any objection that the trial court failed to administer an oath to a *279 witness must be raised in the trial court before the entry of judgment, and, absent objection at that time, any claim of inad-missability of unsworn testimony of the ■witness is waived. As noted, the record is clear that, in this case, there was no objection in the trial court regarding the failure of the witnesses to be placed under oath. Accordingly, the failure of the trial court to administer an oath was waived.
Williams also argues on appeal that, even considering the unsworn testimony, the trial court did not have sufficient evidence before it to enter the protection-from-abuse order. Pursuant to § 30-5-6(a), Ala.Code 1975, Harris was required to “prove the allegation of abuse by a preponderance of the evidence.” The trial court heard ore tenus evidence before entering its final protection-from-abuse order. It is undisputed that during an altercation involving the television, Harris fell on the concrete floor on November 8, 2010. However, the parties dispute whether Harris fell to the floor on her own or whether Williams pushed her. The parties testified to two completely different accounts of the events.
“In an ore tenus proceeding before the trial court, ‘[t]he trial court is in the best position to observe the demeanor of witnesses and to assess their credibility.’ Yellow Freight Sys., Inc. v. Green, 612 So.2d 1209, 1211 (Ala.Civ.App.1992). It was the duty of the trial court, as the trier of fact, to resolve any conflicts in the evidence. Harden v. Harden, 418 So.2d 159, 161 (Ala.Civ.App.1982).”
Petrey v. Petrey, 989 So.2d 1128, 1134 (Ala.Civ.App.2008). Therefore, the trial court could have reasonably concluded from the demeanor of the parties that Harris’s testimony was more credible than Williams’s testimony. “ ‘[T]his court is not permitted to reweigh the evidence on appeal or to substitute its judgment for that of the trial court.’ ” Schiesz v. Schiesz, 941 So.2d 279, 289 (Ala.Civ.App.2006) (quoting Sellers v. Sellers, 893 So.2d 456, 461 (Ala.Civ.App.2004)). Thus, we conclude that the trial court’s judgment insofar as it included a finding that Williams had committed an act of domestic violence against Harris was supported by sufficient evidence and is due to be affirmed on appeal.
Finally, Williams argues that the trial court’s judgment is due to be reversed because, he says, it prohibits him from communicating and contacting the minor children, although there was no testimony presented at the hearing regarding any acts of abuse against the minor children. In essence, he argues that the evidence does not support the judgment. We disagree.
Initially, we note that Williams is correct in stating that the record is devoid of any testimony or allegations that Williams perpetrated any acts of abuse against the minor children. However, Williams’s contention is without merit because neither the final judgment nor the ex parte order contain a finding that Williams committed any acts of abuse against the minor children, nor does either prohibit him from communicating with or contacting the minor children.
The final judgment states: “THERE HAS BEEN A FINDING BY THE COURT OF DOMESTIC VIOLENCE COMMITTED BY [Williams,] THE DEFENDANT[,] AGAINST [Harris,] THE PLAINTIFF.” (Capitalization in the original.) There is no finding regarding any acts of abuse against the minor children. Additionally, the judgment states that “[a]ll provisions of the Ex Parte Protection Order remain in full force” and that “[t]he Defendant, Tony Williams, is restrained, prohibited and enforced from threatening, committing or attempting to commit any *280 act of abuse against Dorothy Harris [or the minor children].”
The ex parte order, which was incorporated into the final judgment, states that “[t]he Defendant is enjoined from threatening to commit or committing, acts of abuse, as defined in the Protection for Abuse Act, against the: Plaintiff and children.” Further, the ex parte order states that “[t]he Defendant is ordered to stay away from the Plaintiffs residence and the children’s school.” It does not prohibit contact or communication between Williams and the minor children; the ex parte order, which is on a preprinted form, does not contain a single marking in the section of the preprinted form that would encompass a restriction as to communication or contact between Williams and the minor children. Therefore, neither the ex parte order nor the final judgment prohibits Williams from communicating with or contacting the minor children.
On appeal, Williams focuses on the section of the final judgment that states: “Tony Williams, is restrained, prohibited and enforced from threatening, committing or attempting to commit any act of abuse against Dorothy Harris, [or the minor children].” Pursuant to Ala. Code 1975, § 30 — 5—7(b)(1), a trial court, in an ex parte or modification hearing in a protection-from-abuse proceeding, may “[e]njoin the defendant from threatening to commit or committing acts of abuse, as defined in this chapter, against the plaintiff or children of the plaintiff, and any other person designated by the court.” Accordingly, the portion of the ex parte order enjoining Williams from threatening to commit or committing acts of abuse against the minor children, which was incorporated into the final judgment, is due to be affirmed. Additionally, the portion of the final judgment enjoining Williams from threatening to commit or committing acts of abuse against the minor children is also due to be affirmed, because the statement merely restricts Williams from violating criminal statutes of the state of Alabama.
Accordingly, because the final judgment neither prohibits Williams’s right to communicate with and to contact the minor children nor contains a finding that Williams committed acts of abuse against the minor children, we conclude that the final judgment is due to be affirmed.

Conclusion

Although the trial court did not require the witnesses to take an oath, the admissibility-of-testimony issue was waived because there was no objection in the trial court. Further, the trial court’s judgment was supported by sufficient evidence. We, therefore, affirm the trial court’s judgment.
APPLICATION GRANTED; OPINION OF JUNE 17, 2011, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.